

NUMBER 13-08-00436-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JOSE CARBAJAL,                                                                      Appellant,

v.

THE STATE OF TEXAS,                                                              Appellee.

### On appeal from the 105th District Court
### of Kleberg County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Benavides
### Memorandum Opinion by Justice Rodriguez

Appellant Jose Carbajal challenges his conviction for aggravated sexual assault and indecency with a child on the grounds that the trial court erred in denying his motion to suppress his written statement given to police. *See* TEX. PENAL CODE ANN. §§ 21.11, 22.021(a)(1)(B), (2)(B) (Vernon Supp. 2009). By one issue, Carbajal argues that because

he did not knowingly, voluntarily, and intelligently waive his *Miranda* rights at the time of his alleged custodial interrogation, the trial court erred in denying his motion to suppress. *See* TEX. CODE. CRIM. PROC. ANN. art 38.22, § 2(b) (Vernon 2005); *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). We affirm.

## I. BACKGROUND[1]

In August 2007, the Kleberg County Sheriff's Department began investigating the alleged sexual assault of A.O., a ten-year-old girl. Carbajal, A.O.'s grandfather, became a suspect in the case. A sheriff's department investigator attempted to contact Carbajal to arrange an interview but was unable to reach him. Instead, Carbajal voluntarily appeared at the sheriff's office to "clear things up" regarding the incident with A.O. After he arrived at the sheriff's office, an investigator interviewed Carbajal regarding A.O.'s allegations. Before beginning the interview, the investigator read Carbajal his *Miranda* rights and asked if he understood his rights. After Carbajal indicated his assent, the investigator wrote "yes" on the statement. The interview was conducted primarily in Spanish, and the investigator then wrote Carbajal's statement in English.[2] Another sheriff's office employee came into the interview room and read the statement back to Carbajal in English, after which Carbajal signed the statement. It is undisputed that Carbajal was not handcuffed during the interview. After Carbajal signed the statement, however, the investigator placed Carbajal under arrest.

---

[1]Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

[2]The parties do not dispute that Carbajal's reading and writing skills are limited. It is also undisputed that Carbajal's primary language is Spanish. However, the parties disagree over the extent to which Carbajal understands spoken English.

Carbajal was indicted on two counts of aggravated sexual assault and two counts of indecency with a child. Carbajal moved to suppress the written statement he gave the investigator at the sheriff's office under the Texas Code of Criminal Procedure and United States and Texas Constitutions, arguing that, while he was in the custody of the police, he gave a statement without knowingly, intelligently, and voluntarily waiving his rights. The trial court conducted a hearing on the motion and heard the following testimony:

**Lt. David Mendoza**

Lt. Mendoza is the sheriff's department investigator who interviewed Carbajal. He testified that Carbajal came to the sheriff's office voluntarily with his wife and that no patrol car picked him up. Lt. Mendoza stated that when Carbajal arrived, he escorted Carbajal to his office, where he told Carbajal to make himself comfortable and asked Carbajal's wife to wait outside. He testified that they eventually moved to a different room with a table so that Lt. Mendoza could sit closer to Carbajal as he was transcribing Carbajal's statement into English. Lt. Mendoza stated that, although Carbajal was a suspect at the time he came to the sheriff's office, Lt. Mendoza would have let him walk out if he had not given a statement.

**Yvonne Barbour**

Barbour is the sheriff's department employee who read Carbajal's statement back to him before he signed it. Barbour testified that Carbajal told her he understood English.

**Jose Carbajal**

Carbajal testified that he never spoke to the sheriff's department before he voluntarily showed up at their office. He stated that he had heard rumors at work that A.O. was accusing him of molesting her, so he arranged for his wife to drive him to the sheriff's

3

office in Kingsville to "clear things up." Carbajal testified that he told Lt. Mendoza his story from start to finish and that Lt. Mendoza asked no questions during the process. He stated that he did not understand his *Miranda* rights. Carbajal testified that he did not know he was a suspect and did not realize he was in trouble until after he signed his statement and his wife told him he should not have done so.

The trial court denied the motion to suppress and filed no findings of fact in connection with the suppression hearing.

The case proceeded to trial, and the jury returned a guilty verdict on one of the counts of aggravated sexual assault and both counts of indecency with a child.[3] The jury assessed punishment at thirty years' incarceration for the sexual assault count and five years' incarceration for each indecency count; the trial court ordered the sentences to run concurrently. This appeal ensued.

## II. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress for abuse of discretion, applying a bifurcated standard of review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007); *State v. Vasquez*, No. 13-08-00602-CR, 2009 WL 4688600, at *4 (Tex. App.–Corpus Christi Dec. 10, 2009, pet. filed). The bifurcated standard requires that we give "almost total deference" to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Herrera v. State*, 241 S.W.3d 520, 526-27 (Tex. Crim. App. 2007).

---

[3]Carbajal also objected at trial to the admission of his written statement to the sheriff's investigator, but the trial court overruled the objections.

4

However, we review de novo the trial court's determination of the law and its application of law to facts that do not turn upon an evaluation of credibility and demeanor. *Id.* at 527; *St. George*, 237 S.W.3d at 725. When the trial court has not made a finding on a relevant fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *Herrera*, 241 S.W.3d at 527. We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); *Vasquez*, 2009 WL 4688600, at *4.

### III. CUSTODIAL INTERROGATION

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself . . . ." U.S. CONST. amend. V. To "safeguard an uncounseled individual's constitutional privilege against self-incrimination," the United States Supreme Court has prescribed a series of warnings that must be given to the individual during custodial interrogation. *Herrera*, 241 S.W.3d at 525 (citing *Miranda v. Arizona*, 384 U.S. 436, 442-57 (1966)). The State may not use "[u]nwarned statements obtained as a result of custodial interrogation" as evidence in a criminal proceeding. *Id.* Article 38.22 of the Texas Code of Criminal Procedure sets out the state law corollary to the federal *Miranda* requirements and provides that "[n]o written statement made by an accused as a result of custodial interrogation is admissible as evidence against him" unless it is shown that the accused was warned of his rights and knowingly, intelligently, and voluntarily waived them. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a)-(b). However, a person's rights under the Texas Code of Criminal Procedure

5

and the United States and Texas Constitutions are triggered only when the person is shown to be in custody. *See Zavala v. State*, 956 S.W.2d 715, 723 (Tex. App.–Corpus Christi 1997, no pet.).

"[T]he defendant bears the initial burden of proving that a statement was the product of 'custodial interrogation.'" *Herrera*, 241 S.W.3d at 526 (quoting *Wilkerson v. State*, 173 S.W.3d 521, 532 (Tex. Crim. App. 2005)). Custody is evaluated on an "ad hoc" basis; we apply a "reasonable person" standard and ask if, under the totality of the circumstances, "a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Dowthitt v. State*, 931 S.W.2d 244, 254-55 (Tex. Crim. App. 1996) (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)). In other words, we make two discrete inquiries in our custody determination: first, we inquire as to the objective circumstances surrounding the interrogation; and second, given those circumstances, we ask whether "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Herrera*, 241 S.W.3d at 532 (internal citations omitted). There are four general situations in which custody may arise and a person must be warned of his rights before the interrogation proceeds:

> (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect he is free to leave.

*Dowthitt*, 931 S.W.2d at 255. In the fourth situation, the officers' knowledge of probable cause must be manifested to the suspect; "[s]uch manifestation could occur if information

6

substantiating probable cause is related by the officers to the suspect or by the suspect to the officers." *Id.* The manifestation of probable cause does not "automatically establish custody," however. *Id.* Probable cause is but one factor in determining whether the circumstances of the interrogation "would lead a reasonable person to believe he is under restraint to the degree associated with an arrest." *Id.*

If a person voluntarily submits to an interview by a police officer and knows or should know that law enforcement suspects his involvement in the crime being investigated, his freedom of movement is not necessarily restrained and he is not necessarily in custody. *Vasquez*, 2009 WL 4688600, at *4 (citing *Shiflet v. State*, 732 S.W.2d 622, 630 (Tex. Crim. App. 1985)); *see Zavala*, 956 S.W.2d at 724. Moreover, the reading of Miranda warnings does not "automatically transform a non-custodial setting into a custodial interrogation." *Vasquez*, 2009 WL 4688600, at *5. However, the fact that an interrogation begins as non-custodial "does not prevent custody from arising later" because of police conduct during the encounter that causes "a consensual inquiry to escalate into custodial interrogation." *Dowthitt*, 931 S.W.2d at 255; *Vasquez*, 2009 WL 4688600, at *4.

## IV. Discussion

By his sole issue on appeal, Carbajal argues that the trial court erred in denying his motion to suppress because he did not knowingly, intelligently, and voluntarily waive his rights before making his written statement. Specifically, Carbajal argues that because he does not read or write fluently in English, the police officer who took his statement did not adequately apprise him of his rights.

7

Carbajal fails to explain, however, whether his right to be warned was ever triggered in the first place. *See Zavala*, 956 S.W.2d at 723 (holding that a person's rights to be warned come into play only when the person is in custody). It is undisputed that Carbajal voluntarily appeared at the sheriff's office out of a desire to "clear things up." *See Vasquez*, 2009 WL 4688600, at *4 (holding that a person's voluntary submission to an interview by a police officer does not indicate restraint of his freedom of movement and thus custody). He was not formally summoned by the sheriff's office or escorted to the office in a patrol car, and once there, he was made comfortable by Lt. Mendoza and never handcuffed during the interview. *See Herrera*, 241 S.W.3d at 532 (requiring that we inquire into the objective circumstances surrounding the interrogation). Carbajal told his story to Lt. Mendoza freely without being interrupted by interrogation-style questioning. *See id.* Although Carbajal was considered a suspect by Lt. Mendoza, that information was never directly related to Carbajal, and Lt. Mendoza stated that Carbajal would have been free to leave the sheriff's office if he had not given a statement. *See Dowthitt*, 931 S.W.3d at 255 (holding that an officer's suspicions must be manifested to the suspect to give rise to "custody"). In fact, Carbajal himself testified at the suppression hearing that he never considered himself a suspect and did not realize he might be in trouble until his wife told him he should not have signed the statement.

The only factor arguably indicating custody is that probable cause became apparent during the interview when Carbajal implicated himself in the sexual encounter with and assault of A.O. *See id.* However, considering the entirety of the circumstances, we cannot conclude that this one factor outweighs the previously discussed evidence, all of which

8

militates against a finding that a reasonable person would have felt he was not at liberty to terminate the interview and leave. *See Herrera*, 241 S.W.3d at 532; *Dowthitt*, 931 S.W.2d at 255.

In sum, our review of the record reveals that, at the time he made his statement, Carbajal was not in custody and was, therefore, not entitled to be warned of his rights. *See Zavala*, 956 S.W.2d at 723. Under the totality of the circumstances, no reasonable person could have believed that his movement was restrained to the degree associated with a formal arrest. *See Herrera*, 241 S.W.3d at 525; *Dowthitt*, 931 S.W.2d at 254-55. Therefore, the trial court did not abuse its discretion in denying Carbajal's motion to suppress. *See Herrera*, 241 S.W.3d at 526-27; *Dixon*, 206 S.W.3d at 590 (commanding that we uphold a trial court's ruling if it is reasonably supported by the record and is correct under any theory of applicable law). Carbajal's sole issue is overruled.

**V. CONCLUSION**

The judgment of the trial court is affirmed.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
11th day of March, 2010.

9